NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMASON AUTO GROUP, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>MARIO R. FERLA, et al.,<br><br>    Defendants. | Civil Action No.: 08-4143 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

  This matter comes before the Court on Defendants' motion for an order transferring venue to the United States Bankruptcy Court for the Central District of California pursuant to 28 U.S.C. §§ 1404(a) and 1412. The Court has considered the submissions in support of and in opposition to the motion and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion is granted.

**I. BACKGROUND**

  Plaintiff Thomason Auto Group, LLC, ("Thomason") filed the Complaint in this matter on August 14, 2008, asserting fifteen claims against Defendants, a group of officers and directors of China America Cooperative Automotive, Inc. ("CHAMCO") and ZXAuto NA, Inc. ("ZXNA"), an affiliate/subsidiary of CHAMCO. Thomason entered into a Distributorship Agreement with ZXNA. Under the agreement Thomason paid $6,000,000 to ZXNA to become a member of an affiliated company, ZXAuto West, and in exchange for rights to distribute cars.

Subsequent to Thomason's wire of the $6,000,000 to CHAMCO's bank account, the defendants in this case informed the CHAMCO board that representations made by Edward Michael Daspin, an agent acting on behalf of CHAMCO and ZXNA in negotiating the Distributorship Agreement with Thomason, were false.  This information was conveyed to the board in a memorandum dated February 29, 2008.  Scott Thomason had been elected to the CHAMCO Board on February 11, 2008 (subject to shareholder approval).  Unknown to Thomason at the time of the negotiations of the Distributorship Agreement, a rift in the CHAMCO/ZXNA board of directors had occurred, with the defendants in this action representing one of the factions.  The rift culminated in an alleged attempted corporate coup at a CHAMCO board meeting held in New Jersey on March 3, 2008.  Various state court actions were filed after this meeting.  The present action was filed several months later with this Court.

      CHAMCO and ZXNA are not defendants in this action.  The claims against the defendants include: Racketeer Influenced and Corrupt Organizations Act ("RICO") violations under 18 U.S.C. § 1962(c); RICO conspiracy under 18 U.S.C. § 1962(d); tortious interference with prospective business relations; fraud in the inducement; unjust enrichment; conversion; common law fraud; intentional misrepresentation; negligent misrepresentation; equitable fraud; aiding and abetting the commission of a tort; conspiracy to commit a tort; breach of fiduciary duty; and constructive trust.  One of Thomason's allegations against the defendants, which underlies all of his claims, is that they "carefully orchestrated [a] plan to file involuntary bankruptcy petitions to drive CHAMCO and ZXNA NA out of business."  (Compl. ¶ 37.)  With respect to the RICO claims, Thomason pleads in the alternative:

      Count 1 defines the [RICO] enterprise as an "association in fact" enterprise of

> [Defendants], CHAMCO and ZXNA NA. Count 2 defines the enterprise as ZXNA NA and its parent, CHAMCO. Plaintiff contends in Count 2 that the Defendants utilized the enterprise to carry out their racketeering activities. In Count 3 Plaintiff alleges a conspiracy to violate 18 U.S.C. § 1962(c).

(Id. ¶ 47 n.2.) Thomason asserts that "[b]eginning in or about September of 2007 and continuing until the present, the Individual Defendants, CHAMCO and ZXNA NA and their co-conspirators combined, conspired and agreed together and with each other to commit the aforementioned violations of 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d)." (Id. at ¶ 246.) With respect to its fraud in the inducement claim, Thomason alleges:

> The Defendants, individually and through their authorized agent, [Mr. Daspin,] on behalf of CHAMCO and ZXNA NA, made numerous fraudulent material misrepresentations to Thomason Auto in order to induce his investment and execution of the Distributorship Agreement. Those material misrepresentations included: (1) representations that the Zhongxing manufactured cars would be ready for sale in the United States as early as June 2008, but no later than December 2008; (2) presenting Thomason Auto with a fraudulent balance sheet with knowledge of its falsity and with the intention that Thomason Auto rely on its content; (3) representations that CHAMCO was sufficiently capitalized to procure and modify the cars for sale in the United States; (4) representations that an additional investor would be located to purchase a twenty-two percent (22%) interest in ZXNA West to further capitalize CHAMCO and ZXNA NA; and, (5) that [Mr.]Daspin had invested substantial amounts of money in CHAMCO.

(Id. at ¶ 258.) With respect to its unjust enrichment claim, Thomason alleges that "Defendants have benefitted from the fraudulent acquisition and improper use of Thomason Auto's investment monies." (Id. at ¶ 268.) In support of its conversion claim, Thomason states that "the Defendants wrongfully induced Thomason Auto to invest $6,000,000.00 in ZXNA West," that Thomason has "demanded that Defendants return its investment in the amount of $6,000,000.00, and [that] Defendants have failed to do so." (Id. at ¶¶ 271-72.) In addition to seeking money damages, Thomason also seeks to have a constructive trust placed on funds allegedly diverted by

Defendants from Thomason, via CHAMCO.  (Id. at ¶ 327.)

Prior to filing this Complaint, on July 7, 2008, three separate, but related, lawsuits were removed from state court.  As more thoroughly discussed in this Court's prior Opinion transferring these actions, these three actions included: (1) the Thomason Action, (2) the Ferla Action, and (3) the CHAMCO Action.  (See Thomason Auto Group, LLC v. China Am. Cooperative Auto., Inc., et al., Case No. 08-3365, Doc. No. 56 (D.N.J. Feb. 27, 2009).)  In the Thomason Action, Thomason brought claims against CHAMCO and ZXNA and certain individual defendants including Mr. Daspin, alleging that CHAMCO and ZXNA had fraudulently induced it to enter into a Distributorship Agreement.  (See id., at Doc. No. 15-9, Ex. D, Thomason Action Compl.)  Thomason brought claims in that action for fraud in the inducement, unjust enrichment, conversion, and constructive trust.  The allegations for these claims were substantially similar, if not the same, to the claims as asserted in this action, except that different individuals are named as defendants in the present action.

For its fraud in the inducement claim, Thomason alleged that "Michael Daspin, [as an agent] on behalf of CHAMCO and ZXNA NA, fraudulently represented to Thomason Auto that . . . cars would be ready for sale . . . no later than December 2008."  (Id. at ¶ 56.)  It also asserted that "CHAMCO and ZXNA NA fraudulently represented to Thomason Auto that CHAMCO was sufficiently capitalized to procure and modify the cars for sale," and that Mr. Daspin represented "that he had invested substantial amounts of money in CHAMCO."  (Id. at ¶¶ 61, 67.)  Thomason asserts that the "[o]fficers and directors of CHAMCO and ZXNA NA were aware of and expressly admitted that Michael Daspin, as an agent on behalf of CHAMCO and ZXNA NA, fraudulently induced Thomason auto to enter the Distributorship Agreement."  (Id. at ¶ 71.)  The

unjust enrichment claim alleged that "Defendants have benefitted from the fraudulent acquisition and improper use of Thomason Auto's investment monies." (Id. at ¶ 75.) The conversion claim alleged that "Thomason Auto has informally demanded that Defendants return [its] investment in the amount of $6,000,000.00, and Defendants have failed to do so." (Id. at ¶ 81.)

The Ferla Action was brought by the same group of individuals who are defendants in this action against another faction of the board of directors of CHAMCO. The Ferla plaintiffs contended that they were the proper board of directors of CHAMCO. They sought to enjoin the defendants in that action from taking actions that would bind CHAMCO, to terminate a CHAMCO contract, to enjoin further dissipation of corporate funds, and to recover funds allegedly wrongfully taken by the defendants.

The CHAMCO Action was brought against the Ferla Action plaintiffs, Scott Thomason, Thomason Auto, and other individuals. CHAMCO brought twenty-one counts against these defendants, including an allegation that the Ferla group conspired to conduct a corporate coup on March 3, 2008. The CHAMCO Action also alleges a conspiracy between the Ferla group and Thomason to fabricate the Thomason Action and disable CHAMCO and ZXNA through various default triggers in an Importation and Distribution Agreement.

On June 3, 2008, after these actions were filed in state court, an involuntary bankruptcy was filed under Chapter 7 of the Bankruptcy Code against ZXNA. Then, on July 7, 2008, a second involuntary bankruptcy petition was filed, this time against CHAMCO. The bankruptcy filings were initially opposed by a temporary fiscal agent appointed by the state court who authorized the bankruptcy counsel to file a motion to dismiss the bankruptcy case or transfer it to the District of New Jersey. On September 8, 2008, the petitioning creditors and

CHAMCO/ZXNA reached a settlement and filed a motion to approve the settlement in the bankruptcy court. (See In re China Am. Cooperative, Inc., No. 08-bk-13876, Doc. No. 56, Settlement Agreement (Bankr. C.D. Cal.) [hereinafter "CHAMCO Bankruptcy Action"].) On September 24, 2008, Thomason filed an objection to the proposed settlement, and on September 25 it filed a motion to dismiss the involuntary actions or, in the alternative, to transfer the venue to New Jersey. (See In re ZX Auto. Co. of N. Am., No. 08-bk-13065, Doc. Nos. 71, 73 (Bankr. C.D. Cal.) [hereinafter "ZXNA Bankruptcy Action"].) In his motion he argued that the involuntary bankruptcy actions were filed in bad faith. Other parties made similar arguments in similar motions to dismiss. On October 6, 2008, the Bankruptcy Court held a hearing, and on December 22, 2008, it rejected the objectors' arguments, including Thomason's, and approved the settlement with a few revisions. (Id. at Doc. No. 158.) Pursuant to the settlement agreement, a Chapter 11 trustee has been appointed and the bankruptcies have been converted from Chapter 7 to Chapter 11 proceedings. (Id.) On March 19, 2009, the bankruptcy judge denied the motions to dismiss or transfer venue. (Id. at Doc. No. 205.)

On February 27, 2009, this Court held that the three actions previously discussed, the Thomason Action, the Ferla Action, and the CHAMCO Action, were "related to" the California bankruptcy proceedings and granted the Ferla group's motion to transfer these actions to the Bankruptcy Court. This Court held:

> The Thomason Action and CHAMCO Action involve the debtor itself and thus are clearly "related to" the bankruptcy estate. This is especially true given that the Thomason Action requests rescission of the Thomason Agreement, a remedy that would affect at least $ 6 million of the bankruptcy estate. The Ferla Action does not directly involve CHAMCO or ZXNA but it addresses the question of who constitutes the CHAMCO Board of Directors and it requests limits of further dissolution of corporate funds.

(Thomason Auto Group, Case No. 08-3365, Doc. No. 56, at 6.)  Defendants move now to transfer this case to the California Bankruptcy Court.  They argue that, like the three previously transferred actions, this case is also related to the bankruptcy proceedings.

## II.     LEGAL STANDARDS

Motions to transfer venue in cases related to a bankruptcy are governed by 28 U.S.C. § 1404 or 28 U.S.C. § 1412.  28 U.S.C. § 1404 serves as the general venue statute, where "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  For actions "related to" bankruptcies, many courts maintain that 28 U.S.C. § 1412 governs: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."  The only difference between the two statutes is the additional requirement under §1404(a) only allowing transfer to a venue that would have been originally valid.  See, e.g., City of Liberal, Kansas v. Trailmobile Corp., 316 B.R. 358, 362 (D. Kan. 2004) (discussing cases on each side of the split and recognizing the only "substantial difference" in the two statutes being the original venue requirement).  Thomason primarily argues that transfer is not appropriate under either of these statutes because it asserts that the Bankruptcy Court lacks jurisdiction to hear this matter.

"Bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases 'under' title 11; (2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case under title 11."  Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006); see also 28 U.S.C. § 1334.  "[A] proceeding is 'related to' a bankruptcy case if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in

bankruptcy.'" Stoe, 436 F.3d at 216 (quoting In re Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).  This test "is broad and extends to any related lawsuit or proceeding, *including third-party proceedings*, that 'would affect the bankruptcy proceeding without the intervention of . . . another lawsuit.'" In re Zinchiak, 406 F.3d 214, 226 (3d Cir. 2005) (emphasis added) (quoting In re Federal-Mogul Global, Inc., 300 F.3d 368, 382 (3d Cir. 2002)).  Thus, "if the bankruptcy estate could suffer any conceivable benefit or detriment as a result of the determination of the adversary proceeding, then bankruptcy jurisdiction exists." In re Michigan Real Estate Ins. Trust, 87 B.R. 447, 458 (Bankr. E.D. Mich. 1987).  Under these broad guidelines, "'related to' jurisdiction has been exercised where [the outcome of] third-party actions . . . could have a direct effect on the assets of the estate." In re Zinchiak, 406 F.3d at 226 (citing Kaonohi Ohana, Ltd. v. Sutherland, 873 F.2d 1302, 1306-07 (9th Cir. 1989)); see also In re Fulda Independent Co-Op, 130 B.R. 967, 975 (Bankr. D. Minn. 1991) (finding related to jurisdiction where "[m]ost, if not all, of the named Plaintiffs have filed claims against the bankruptcy estate which are based on the same events and transactions which give rise to this lawsuit[, and] . . . any recovery which Plaintiffs may obtain from Defendant may support a partial or total disallowance of their claims against the estate").

## III.   DISCUSSION

Based on the foregoing, the first question this Court must address is whether this action is related to the California bankruptcy proceedings. Thomason states that "[t]his action was filed as a result of the actions of Defendants . . . to fraudulently induce Plaintiff . . . to infuse millions of dollars into an entity named ZX Auto West, and to attempt to misappropriate the assets and business opportunities of [CHAMCO] and [ZXNA]." (Br. of Thomason Auto Group, LLC in

Opp'n to Mot. to Transfer Venue to United States Bankr. Ct. for the C.D. of Cal. Under 28 U.S.C. § 1404(a) and § 1412 [hereinafter "Opp'n Br."], at 2-3.)  Thomason argues that the defendants in this action are merely third parties to the CHAMCO and ZXNA bankruptcy proceedings, and that this case will have no effect on either the administration or distribution of the bankruptcy estates.  Therefore, it argues, this matter is not related to the bankruptcy proceedings.  Additionally, Thomason argues that the Bankruptcy Court is without power to adjudicate the RICO action because it is a non-core proceeding and the Bankruptcy Court cannot conduct a jury trial in non-core proceedings.  On the other hand, Defendants argue that this matter is related to the bankruptcy proceedings because: (1) Thomason has filed similar claims against the Debtors as it asserts here, (2) the RICO claim alleges that the Debtors are part of the RICO enterprise alleged; (3) the same core set of operative facts underlie both the bankruptcy actions and this action, and (4) Defendants have statutory, common law, and contractual indemnification claims that could directly impact the bankruptcy estate.  Defendants also argue that the Bankruptcy Court has previously rejected the same or similar bad faith argument as Thomason presents in this case, so adjudication of the present issues by this Court would risk inconsistent factual and legal rulings and undermine the California bankruptcy proceedings.  Defendants argue that the RICO claims, which are at least partially based on a claim of bad faith filing of the bankruptcy actions, is a core bankruptcy issue.  Finally, Defendants argue that Thomason does not have a right to a jury trial since it filed a proof of claim in the bankruptcy actions.  Even if a right to a jury trial exists, the Defendants assert that the inability to ultimately conduct a jury trial in the Bankruptcy Court does not bar a bankruptcy court from conducting pre-trial matters.

This Court agrees with Defendants that this matter is related to the bankruptcy proceedings. While common facts alone are not enough to confer related to jurisdiction, this Court finds that Defendants' arguments are soundly based on much more than common facts. Three *causes of action* that Thomason brings here, fraud in the inducement, unjust enrichment, and conversion, are essentially identical to the claims it brought in the Thomason Action against the Debtors and other individual defendants; an action this Court previously found was related to the bankruptcy proceedings. For example, the unjust enrichment claim brought here alleges that "Defendants have benefitted from the fraudulent acquisition and improper use of Thomason Auto's investment monies." (Compl. ¶ 268.) The unjust enrichment claim in the Thomason Action is identical. Also, like in the Thomason Action, the present causes of action, naming the Ferla defendants, alleges that the individual defendants acted on behalf of the Debtors. Thus, it is conceivable that the amount of damages that may be due from the estate may be affected by recovery by Thomason, if any, in this action. The bottom line in both this case and the previously transferred Thomason Action is that Thomason asserts that it was defrauded out of a $6,000,000 investment by various individuals acting on behalf of the Debtors, some named in this action and some in the Thomason Action previously transferred. Thomason seeks return of its investment in both actions. In other words, this is not some tangential claim by Thomason against some third-party defendants. Many claims brought in this action are Thomason's primary claims asserted against a different group of defendants, a group of defendants who are also party to various actions before the Bankruptcy Court. Finally, in this action, it also asserts a claim for money the Defendants allegedly wrongfully diverted from the Debtors. The facts, the parties, and the claims brought here and in the Bankruptcy Court are inextricably intertwined.

Additionally, the new RICO claims alleged here include the Debtors as at least part of, if not the complete, RICO enterprise. The Court agrees with Defendants that a finding that the Debtors were a RICO enterprise would affect, or at least could conceivably affect, the administration of the bankruptcy estate and the ability of the Debtors to reorganize. These claims also have as a basis a claim by Thomason that Defendants filed the bankruptcy proceedings in bad faith. Thus, as framed by Thomason, the bankruptcy proceedings and the Debtors are at the center of its RICO claims. Because the Court finds these reasons amply sufficient to find related to jurisdiction, it need not reach Defendants' argument that the potential for indemnification also provides a basis for jurisdiction.

The Court also agrees with Defendants that Thomason's claim for a jury trial does not preclude transfer to the Bankruptcy Court. This is true even disregarding Defendants' argument regarding Thomason's filing of a proof of claim in the Bankruptcy Court. It is true that "[a] bankruptcy court cannot conduct a jury trial in a non-core proceeding." In re Chet Decker, Inc., No. 06-3658, 2006 U.S. Dist. LEXIS 77091, at *7 (D.N.J. Oct. 23, 2006). Additionally, a bankruptcy court can only conduct a jury trial in a core proceeding "with the express consent of all parties." 28 U.S.C. § 157(e). But, "even when a district court must ultimately preside over a trial by jury, there is no reason why the Bankruptcy Court may not preside over [an] adversary proceeding and adjudicate discovery disputes and motions only until such time as the case is ready for trial." Id., at 8 (quoting Gen. Elec. Capital Corp. v. Teo, No. 01-1686, 2001 U.S. Dist. LEXIS 22266, at *14 (D.N.J. Dec. 14, 2001)); see also In re Orion Pictures Corp., 4 F.3d 1095, 1101-02 (2d Cir. 1993); In re Keene, 182 B.R. 379, 385 (S.D.N.Y. 1995). Furthermore, where there are questions about whether matters are core or non-core, as there are here, the Bankruptcy

Court is often better equipped to make that determination in the first instance.  See In re Chet Decker, Inc., 2006 U.S. Dist. LEXIS 77091, at *10, 12.

Having found that this matter is related to the bankruptcy proceedings, the only remaining issue is whether transfer to that court is appropriate.  As with the previously transferred actions, this Court finds that, in the interests of justice, this matter should also be transferred.  Thomason argues that venue is not proper in California.  This argument is peculiar given that, as part of the unconsummated settlement discussions in this matter, it appears that Thomason was willing to agree to a consensual transfer to the Central District of California.  In any case, Thomason appears to agree that venue would be proper if the case was related to the bankruptcy proceedings, which this Court has so found. (See Opp'n Br., at 31.)  The Distributorship Agreement at issue here was negotiated in California, and the bankruptcy proceedings which Thomason claims were initiated in bad faith are being administered by the California Bankruptcy Court.  This Court finds that venue is appropriate in California.  And, because this matter is related to the bankruptcy proceedings, efficient administration of the bankruptcy estate and proceedings and the avoidance of duplicative or inconsistent rulings, given the overlapping issues and claims, favors transfer.  Thomason is a California corporation. (Compl. ¶ 1.)  It has not presented any facts that outweigh the considerations favoring transfer of this action to the California Bankruptcy Court.

## IV.     CONCLUSION

For the foregoing reasons, this Court grants Defendants' motion to transfer venue to the United States Bankruptcy Court for the Central District of California.  An appropriate Order accompanies this Opinion.

DATED: October 23, 2009                /s/ Jose L. Linares
                                                                 JOSE L. LINARES
                                                                 UNITED STATES DISTRICT JUDGE